UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER L.M. LEMAY, *personally and as the guardian of C.L.E. and V.E., minors*, and COURTNEY J. LIVINGSTON<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL B. MAYS, and the CITY OF MINNEAPOLIS,<br><br>Defendants. | Civil No. 19-2463 (JRT/KMM)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Michael B. Padden, **PADDEN LAW FIRM, PLLC**, 8673 Eagle Point Boulevard, Lake, Minnesota 55042; Devon M. Jacob, **JACOB LITIGATION**, P.O. Box 837, Mechanicsburg, Pennsylvania 17055-0837, for plaintiffs.

Heather Passe Robertson and Kristin R. Sariff, Assistant City Attorneys, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 350 South Fifth Street, Suite 210, Minneapolis, Minnesota 55415, for defendants.

In July 2017, Defendant Michael Mays, a Minneapolis Police Department ("MPD") officer, shot Plaintiffs' two dogs while responding to Plaintiffs' home after their burglar-alarm system was accidentally set off. Plaintiffs brings three counts pursuant to 42 U.S.C. § 1983: Count I against Mays for conducting an illegal search of Plaintiffs' home; Count II against Mays for an illegal seizure of Plaintiffs' dogs; and Count III against Defendant City of Minneapolis (the "City") alleging municipal liability for May's conduct in Count II.

Defendants brought a Rule 12(b)(6) Motion to Dismiss Counts II and III. Because Plaintiffs have sufficiently pleaded facts regarding the allegedly illegal seizure, the Court

1

will **DENY** the Motion to Dismiss as to Count II.  Because Plaintiffs have not sufficiently pleaded facts regarding municipal liability for the allegedly illegal seizure, the Court will **GRANT** the Motion to Dismiss without prejudice as to Count III.  Plaintiffs may, within 45 days, refile with the detailed allegations, if they exist, of events providing the required notice to the City that MPD officers "routinely" used excessive force when encountering dogs.

## BACKGROUND

### I. FACTUAL BACKGROUND

Plaintiff Jennifer LeMay is a resident of Minneapolis.  (Am. Compl. ¶ 4, Nov. 6, 2019, Docket No. 29.)  She is the parent and guardian of two children, V.E. and C.L.E.  (*Id.*)  At the time of the shooting, LeMay's daughter, V.E., was 13 years old and her son, C.L.E., was 15 years old.  (*Id.* ¶¶ 5–6.)  When C.L.E. was five years old, he was diagnosed with multiple emotional-behavioral disorders and is considered disabled as a result of that diagnosis.  (*Id.* ¶¶ 28–29.)

Plaintiff Courtney Livingston is a resident of Minneapolis.  (*Id.* ¶ 7.)  Since age 9, Livingston has been diagnosed with "a severe anxiety disorder," which causes anxiety/panic attacks and "pseudoseizures."  (*Id.* ¶¶ 17–18.)  Although not explicitly stated, it appears that LeMay, V.E., C.L.E., and Livingston all lived together in the same home at 3819 Queen Avenue North, Minneapolis.  (*See id.* ¶ 11.)

Defendant Michael Mays is a sworn MPD officer. (*Id.* ¶ 8.) Defendant City of Minneapolis operates MPD. (*Id.* ¶ 9.)

The two dogs at issue are Rocko and Ciroc. (*Id.* ¶ 11.) Rocko is a grey-and-white neutered male American Staffordshire Terrier and, at the time of the shooting, was approximately five years old and weighed 130 pounds. (*Id.* ¶¶ 12, 14.) Ciroc is a brown-and-white neutered male American Staffordshire Terrier and, at the time of the shooting, was also approximately five years old and weighed 60 pounds. (*Id.* ¶¶ 23, 25.) Plaintiffs have owned both Rocko and Ciroc since they were weened. (*Id.* ¶¶ 13, 24.) Rocko served as Livingston's "emotional service animal and seizure alert animal." (*Id.* ¶ 22.) Rocko had taken on this role because, beginning in 2014, "Rocko began to alert" to pheromones which Livingston would release as she was about to suffer a seizure. (*Id.* ¶¶ 20, 19.) Ciroc served as C.L.E.'s service animal. (*Id.* ¶ 32.) Ciroc had taken on this role because "he naturally alerted for C.L.E.'s panic attacks" and C.L.E., "[u]sing publicly available research and training materials," had trained Ciroc "to be a service animal, i.e., weapons alert, self-harm alert, and medication alerts." (*Id.* ¶¶ 30–31.)

On the night of July 8, 2017, Livingston accidentally set off the burglar alarm in Plaintiffs' home. (*Id.* ¶ 33.) The alarm company notified MPD of the alarm at approximately 8:42 PM; at approximately 8:54 PM, LeMay notified the alarm company that the alarm had been accidentally triggered. (*Id.* ¶ 34–35.) At approximately 9:16 PM, MLD officers responded to the alarm, and arrived at Plaintiffs' home at 9:18 PM. (*Id.*

3

¶¶ 36, 38.) The Amended Complaint contains alternative pleading regarding whether the alarm company notified MPD of the false alarm. (*Id.*)

After Mays and his partner, Daniel Ledman, arrived at Plaintiffs' home, Mays jumped over the six-foot privacy fence surrounding Plaintiffs' back yard—without attempting to make contact with anyone inside the home. (*Id.* ¶ 39–40.) Video from Plaintiffs' home security system shows that Mays and Ledman walk past the front door of Plaintiffs' home five times before attempting to make contact with anyone inside. (*Id.* ¶ 42.) While Mays was in the backyard, Ledman knocked on the front door at 9:21 PM. (*Id.* ¶ 43.) Livingston answered and told Ledman she had accidentally set off the alarm; Rocko was with her at the front door. (*Id.* ¶¶ 43–44.) Ledman did not tell Livingston that Mays was in the backyard. (*Id.* ¶ 45.)

After Mays jumped the privacy fence and entered the backyard of Plaintiffs' home, he encountered Ciroc, who "walked toward Mays wagging his tail in a friendly manner to greet Mays." (*Id.* ¶ 50.) Mays then shot Ciroc in the face. (*Id.* ¶ 53.) After the shots were fired, Rocko entered the back yard and "presented himself to Mays in a non-threatening manner." (*Id.* ¶¶ 55–56.) Mays then shot Rocko multiple times. (*Id.* ¶ 59.) Both dogs survived but were severely injured and are permanently disabled. (*Id.* ¶¶ 61, 76–82.) Since the shooting, neither Rocko nor Ciroc "are willing to perform their service animal tasks." (*Id.* ¶ 84.)

A subsequent public information report issued by MPD described the incident as "two large pitbulls [sic] charged at the officer," and Mays, in his incident report, described the dogs as "rushing towards me." (*Id.* ¶¶ 95, 98.) A press release issued by the Police Officers Federation of Minneapolis stated that Ciroc "slowly continued to advance toward" Mays. (*Id.* ¶ 99(c)). Plaintiffs state that this description of the dogs' behavior is rebutted by video recordings of the incident from Plaintiffs' home security system. (*Id.* ¶ 96.)

## II.     PROCEDURAL BACKGROUND

Plaintiffs filed a Complaint against Defendants Mays and the City, as well as three other MPD officers and their alarm company, Comcast. (Compl. at 2–3, Sept. 6, 2019, Docket No. 1.) Plaintiffs then filed an Amended Complaint, naming only Mays, the City, and Comcast as Defendants. (Am. Compl. at 2–3.) Plaintiffs later filed a notice of dismissal as to Comcast. (Not. of Dismissal, Jan. 9, 2020, Docket No. 50.) Plaintiffs bring three counts pursuant to 42 U.S.C. § 1983: Count I against Mays for conducting an illegal search of Plaintiffs' home; Count II against Mays for an illegal seizure of Plaintiffs' dogs; and Count III against the City alleging municipal liability for Mays' conduct in Count II. (Am.

Compl. at ¶¶ 124–59.)[1]  Defendants Mays and the City filed a Motion to Dismiss for Failure to State a Claim.  (Mot. to Dismiss, Nov. 20, 2019, Docket No. 32.)

**DISCUSSION**

**I.    STANDARD OF REVIEW**

When reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed.  *Id.* (quoting *Twombly*, 550 U.S. at 557.)  At the motion-to-dismiss stage, the

---

[1] The dismissal of Comcast as a Defendant renders Plaintiffs' Count IV, which was pleaded only against Comcast, moot.  (*See* Am. Compl. ¶¶ 160–71.)

Court "generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.   COUNT II

The Fourth Amendment protects against unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  A dog is considered property for Fourth Amendment purposes.  *Lesher v. Reed*, 12 F.3d 148, 150–51 (8th Cir. 1994).  "A seizure of property occurs when there is some meaningful interference with a person's possessory interests in that property."  *Id.* at 150.  "It can hardly be doubted that by shooting and killing a dog, a police officer "meaningfully interferes" with its owner's possessory interests."  *Powell v. Johnson*, 855 F. Supp. 2d 871, 875 (D. Minn. 2012); *see also Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at *6 (W.D. Tex. Oct. 16, 2009) ("[E]very circuit that has considered the issue has held that the killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment.").

The question before the Court, therefore, "is whether this seizure was reasonable under the circumstances." *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer . . . ." *Id.* "The answer requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify the intrusion.'" *Powell*, 855 F. Supp. 2d at 875 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).  "Because the government

7

'retains a strong interest in allowing law enforcement officers to protect themselves . . . from animal attacks,' courts have recognized that 'no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat.'" *Id.* (quoting *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 271 (D. Conn. 2005)).

The question of whether the dogs in this case "posed an imminent threat" is a factual one.  Because the Court must, at this stage, take all allegations in the Complaint as true, the Plaintiffs have pleaded sufficient facts to survive the Motion to Dismiss.  Ciroc was a trained service animal and Rocko was a trained emotional-service animal.  After Mays entered the backyard, Ciroc "walked" toward him and was "wagging his tail in a friendly manner."  (*Id.* ¶ 50.)  According to the Complaint, Mays then shot Ciroc without provocation.  Nothing in the pleading would allow the Court to conclude that Ciroc was an "imminent threat."  After Mays shot Ciroc, Rocko "presented himself to Mays in a non-threatening manner."  (*Id.* ¶ 56.)  Mays then shot Rocko.  Again, nothing in the pleading would allow the Court to conclude that Rocko was an "imminent threat."

The City seeks to transform this 12(b)(6) motion into a summary-judgment motion, arguing that the Court must use its discretion to consider items outside the Complaint, including Mays' police report and the video recording from his body camera. Relying on *Gainor v. Rogers*, 973 F.2d 1379 (8th Cir. 1992) for the proposition that its qualified-immunity argument should exempt it from discovery, the City argues that the Court should jettison the relatively relaxed standard employed at the motion-to-dismiss stage.

8

The City overstates *Gainor*, however. Although the Eighth Circuit said that "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery," it clarified that this entitlement did not apply if "the plaintiff's allegations state a claim of violation of clearly established law." *Gainor*, 973 F.2d at 1383 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)).

Here, Plaintiffs' allegations, taken as true, do state such a claim.[2] The evidence that Defendants have selected and are asking the Court to consider is not a substitute for discovery—for example, Mays himself has not yet been deposed—and is insufficient for the Court to determine whether Mays actions were "reasonable under the

---

[2] The City relies on a single, unpublished decision, *Bailey v. Schmidt*, 239 F. App'x 306 (8th Cir. 2007), to argue that Plaintiffs' claims fail as a matter of law. In *Bailey*, the Eighth Circuit affirmed the district court's granting of summary judgment for MPD officers who shot and killed Bailey's five dogs in the course of arresting him on prostitution, drug, and gun charges. *Bailey*, 239 F. App'x at 307–08. The court "conclude[d] [that] defendants did not act unreasonably in killing Bailey's dogs, given the uncontested evidence that all of the dogs either **advanced** or acted aggressively toward the officers." *Id.* at 308 (emphasis added) (citing *Altman v. City of High Point*, 330 F.3d 194, 206–07 (4th Cir. 2003)). The City argues that *Bailey* creates a rule of law that if a dog merely advances toward an officer, the officer is entitled to use deadly force. This is absurd. *Altman*, the case to which the Eighth Circuit cites in *Bailey*, does not support such a low bar. *See Altman*, 330 F.3d at 206 (noting that the dog's "behavior toward the meter reader was sufficiently aggressive" for the police to be called and that the dog was fleeing from the officer who shot it, in conformance with a municipal ordinance). Indeed, even the parenthetical supplied by the Eighth Circuit when citing *Altman* does not support the City's proposed standard. *Bailey*, 239. F. App'x at 308–09 ("[O]fficer acted reasonably under circumstances in killing dog that had not attacked anyone but had displayed aggressive behavior[.])". Accordingly, the Court declines the City's invitation to approve a declaration of open season on dogs who merely walk towards police.

circumstances." *Andrews*, 454 F.3d at 918. The Court will therefore deny Defendant's Motion to Dismiss as to Count II.

### III. COUNT III

"Section 1983 provides that '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'" *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (quoting 42 U.S.C. § 1983). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "the Supreme Court held that a municipality is a 'person' that can be liable under § 1983." *Id.* (citing *Monell*, 436 U.S. at 690).

A municipality may have *Monell* liability for a § 1983 claim if the alleged deprivation of constitutional rights was the result of either: (1) an official, adopted municipal policy; (2) an unofficial custom, which need not have been formally approved by the municipality's official channels; or (3) inadequate training. *See Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013). In order to succeed on the inadequate-training theory of liability, the plaintiff must allege facts showing that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," because "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its

10

inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388–89, (1989).  Put another way, the constitutional violation must be the "plainly obvious consequence" of a municipality's failure to train, which is a "stringent standard of fault." *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  Generally, courts consider whether the municipality had notice of the "plainly obvious" unconstitutional behavior to determine whether it acted with deliberate indifference.  *See Atkinson*, 709 F.3d at 1216 ("Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability.").

Here, although Plaintiffs do not specifically note their complaint relies on the inadequate-training theory, it is the only one of the three that fits the allegations.  Plaintiffs do not allege that a particular MPD policy is unconstitutional, as was the case in *Monell*, nor do Plaintiffs allege facts describing a "custom" of using unreasonable force against dogs.  Instead, the Complaint focuses on the City's failure to "adopt appropriate policies" on MPD interactions with dogs and states that MPD "officers were not properly trained" on how to interact with dogs.  (Am. Compl. ¶¶ 158(g)–(h).)

Plaintiffs fail to meet the "stringent standard" of failure-to-train liability because the Complaint is devoid of allegations of notice.  Plaintiffs state that Minneapolis (1) knew that "its officers routinely misidentified friendly canines as threats"; (2) that officers "routinely used excessive force, including deadly force, when encounter non-threatening dogs"; and (3) that when "officers encountered aggressive dogs, they routinely used

excessive force, often just deadly force, instead of lesser objectively reasonable force." (*Id.* ¶¶ 158(k), (n), (o).) Plaintiffs fail to plead any facts that support the conclusory allegation of routine overreaction and use of unreasonable force. Without such specific facts, the Complaint fails to state a claim of municipal liability under *Monell* and the Court will therefore grant Defendants' Motion to Dismiss without prejudice. Plaintiffs shall have 45 days from the date of this order to file an amended complaint if specific factual allegations can support the claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 32] is **GRANTED IN PART AND DENIED IN PART**;

2. Count III of Plaintiffs' Amended Complaint [Docket No. 29] is **DISMISSED** without prejudice;

3. Plaintiffs shall have forty-five [45] days from the date of this order to file an amended complaint.

DATED: July 6, 2020  
at Minneapolis, Minnesota.

　　　　　　　　　　　　　　　　　_____  
　　　　　　　　　　　　　　　　　　　　　JOHN R. TUNHEIM  
　　　　　　　　　　　　　　　　　　　　　　　Chief Judge  
　　　　　　　　　　　　　　　　　　　United States District Court