# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2632
_____

Jennifer L.M. LeMay, personally, and as guardian
of CLE, VE, minors; Courtney J. Livingston

*Plaintiffs - Appellees*

v.

Michael B. Mays; City of Minneapolis

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 11, 2021
Filed: November 15, 2021

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

    The district court[1] refused to grant qualified immunity to Minneapolis Police Officer Michael Mays on a motion to dismiss an unlawful seizure claim based on his shooting two dogs during a residential security check. We affirm.

---

    [1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

## I. Background[2]

Plaintiffs Jennifer LeMay and Courtney Livingston live together in a home in Minneapolis with LeMay's two children and two five-year-old American Staffordshire Terriers (commonly referred to as pit bulls) named Ciroc and Rocko. Livingston suffers from severe anxiety disorder that causes panic attacks and "pseudoseizures," and one of LeMay's children suffers from multiple emotional-behavioral disorders and is considered disabled. Ciroc, a brown-and-white, 60-pound male, served as the child's service animal. Rocko, a grey-and-white, 130-pound male, served as Livingston's "emotional service . . . and seizure alert animal."

One evening, Livingston accidentally set off the burglar alarm in the home. The home security alarm company notified the police department, and Officers Mays and Daniel Ledman responded to the call. Before the officers arrived at the home, LeMay called the security company to report the alarm had been accidentally triggered. It is unclear whether the security company relayed that information to police.[3]

Upon arrival at the home, Mays jumped over the six-foot privacy fence surrounding the backyard while Ledman knocked on the front door. Livingston answered the front door with Rocko at her side and told Ledman that she accidentally set off the alarm. Ledman never told Livingston that another officer was in the backyard.

---

[2]We present the facts in the light most favorable to appellees-plaintiffs, with reasonable inferences drawn in their favor. *See Stanley v. Finnegan*, 899 F.3d 623, 625 (8th Cir. 2018).

[3]The complaint included alternative pleadings as to whether or not the security company notified the police that the alarm had been cancelled. Fed. R. Civ. P. 8(d)(2). The pleading is sufficient if either of the alternative statements is sufficient to state a claim. *Id.*

While in the backyard, Mays encountered Ciroc who, according to the pleadings, "walked toward Mays wagging his tail in a friendly manner to greet Mays." Mays then shot Ciroc in the face. After the shots were fired, Rocko entered the backyard and is alleged to have "presented himself to Mays in a non-threatening manner." Mays then "shot Rocko multiple times in his body." Neither dog was killed, but both were severely injured, rendering them unable to perform their tasks as service animals.

LeMay and Livingston sued Mays and the City of Minneapolis under 42 U.S.C. § 1983, alleging Mays unlawfully searched their home and seized their dogs in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the City was liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[4] Mays and the City moved to dismiss the seizure and *Monell* counts under Fed. R. Civ. P. 12(b)(6), arguing Mays was entitled to qualified immunity and the *Monell* claim had not been sufficiently pled. To support dismissal, they offered video footage from a home security camera and Mays's body camera, still-frame images from both videos, a police report, and training materials for police–dog encounters.

The district court dismissed the *Monell* claim without prejudice. *LeMay v. Mays*, No. Civ. 19-2463, 2020 WL 3642357, at *4 (D. Minn. July 6, 2020). But it denied dismissal of the unlawful seizure claim. *Id.* at *3. It held nothing in the complaint showed either dog was an imminent threat; therefore, the shootings were not objectively reasonable. *Id.* Mays and the City appeal the district court's order denying the dismissal of the unlawful seizure claim against Mays, arguing Mays is entitled to qualified immunity.

---

[4]The original complaint also sued multiple officers and the alarm company under various legal theories. But amendment to the complaint and voluntarily dismissal narrowed the claims.

## II. Discussion

"An interlocutory order denying a motion to dismiss based on qualified immunity is immediately appealable." *Stanley v. Finnegan*, 899 F.3d 623, 625 (8th Cir. 2018). "To warrant reversal, [the defendant] must show that he is entitled to immunity on the face of the complaint." *Dollar Loan Ctr. of S.D., LLC v. Afdahl*, 933 F.3d 1019, 1024 (8th Cir. 2019). "The Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The court reviews the denial of a motion to dismiss de novo. *Stanley*, 899 F.3d at 625.

"Qualified immunity shields public officials from liability for civil damages if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dillard*, 961 F.3d at 1052 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, the plaintiff "must 'plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Id.* (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). If either prong is not satisfied, the defendant is entitled to qualified immunity. *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007).

### A. Unreasonable Seizure

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Privately-owned dogs are "effects" under the Fourth Amendment. *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017). Officers must then act reasonably when seizing them. *See Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006). "The 'reasonableness' of [an officer's actions] must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." *Id.* In assessing reasonableness of a warrantless

seizure of a dog, we "must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion.'" *Id.* (quoting *Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003)). "[T]he state's interest in protecting life and property may be implicated when there is reason to believe the pet poses an *imminent danger*." *Id.* (alteration in original) (emphasis added) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001)). But when an officer "shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful[,]" this is "an unreasonable, warrantless seizure of property, in violation of the Constitution." *Id.*

Thus, in order to decide whether Mays acted reasonably in shooting Ciroc and Rocco, we must decide whether he faced an imminent danger. Accepting the complaint's allegations as true, we conclude he did not.

Two cases assist with our analysis. *See Andrews*, 454 F.3d at 916–19; *Bailey v. Schmidt*, 239 F. App'x 306, 308 (8th Cir. 2007) (unpublished) (per curiam). In *Andrews*, we held a police officer was not entitled to qualified immunity after shooting a dog he mistook for another problem-causing dog, when the dog he shot was in a fenced backyard with the homeowner, presented no danger to others, and was capable of being captured by non-lethal means. 454 F.3d at 916–18. In contrast, in *Bailey*, we held an officer was entitled to qualified immunity when he shot and killed five pit bulls during the search of a home for contraband when the dogs "advanced or acted aggressively toward the officers." 239 F. App'x at 308. These cases illustrate the general principle that a police officer may justify shooting a dog in order to protect life and property only when it presents an objectively legitimate and imminent threat to him or others.

Based on this principle, the complaint here states a plausible claim that Mays unreasonably seized the dog. As pled, Ciroc "walked toward Mays wagging his tail in a friendly manner to greet Mays." Mays then "shot Ciroc in the face, causing

-5-

Ciroc fear and great pain." Then, "Rocko presented himself to Mays in a non-threatening manner." Mays then also "shot Rocko multiple times in his body." In both instances, the complaint sets forth that Mays shot both Ciroc and Rocko when they presented no imminent danger and were not acting aggressively. This establishes a viable claim that Mays unreasonably seized the dogs in violation of the Fourth Amendment.

## B. Clearly Established

We then turn to the second prong of the qualified immunity analysis—whether the right was clearly established at the time of the challenged conduct. *See Dillard*, 961 F.3d at 1052. "Qualified immunity is applicable if [the officer] can show that a reasonable officer with the information he possessed at the time of the shooting could have believed that his conduct was lawful in light of the law that was clearly established on the date of the incident." *Andrews*, 454 F.3d at 918–19. "A right is clearly established if a 'reasonable [officer] would understand that what he is doing violates that right.'" *Id.* at 919 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It is clearly established that an officer cannot shoot a dog in the absence of an objectively legitimate and imminent threat to him or others. *See id.*; *see also Viilo v. Eyre*, 547 F.3d 707, 710–11 (7th Cir. 2008) (holding that a police officer is on notice that unnecessarily killing a person's pet offends the Fourth Amendment); *San Jose Charter of Hells Angels v. City of San Jose*, 402 F.3d 962, 977–78 (9th Cir. 2005) (holding it was clearly established that an officer cannot unnecessarily kill a person's pet); *Brown*, 269 F.3d at 210–11 (holding it was clearly established that an officer cannot destroy a pet that poses no immediate danger and whose owners are "known, available, and desirous of assuming custody"). Again, as pled, Ciroc and Rocko did not pose an imminent threat to Mays. Thus, a reasonable officer would have known that shooting Ciroc and Rocko would violate the owners' "clearly established right to be free from unreasonable seizures of property." *Andrews*, 454 F.3d at 919.

We reject Mays's argument that the *Bailey* case shows that he, in fact, did not violate a clearly established right. Mays states that *Bailey* "is still the only guidance for an officer in [his] situation set forth by this Court." This is not correct. *Andrews* is also precedent that cannot be ignored. Moreover, there are salient factual differences between *Bailey*, an unpublished and thus non-precedential opinion, and the case at hand. For example, in *Bailey*, the officers were faced with *five* aggressive pit bulls, 239 F. App'x at 308, as opposed to two non-aggressive pit bulls. Officers in the former scenario were clearly faced with a threat of imminent danger not present in the latter alleged scenario. In short, *Bailey* does not impact the clearly established rule from *Andrews*—an officer cannot lawfully destroy a pet who does not pose an objectively legitimate and imminent danger to him or others. 454 F.3d at 919. Because the complaint plausibly alleges Mays shot Ciroc and Rocko when they posed no imminent danger to him or others, he is not entitled to qualified immunity at this stage.

## C. Consideration of Other Materials

Mays tries to escape this conclusion by contending that unlike the district court, we should consider certain materials he submitted because they are embraced by the pleadings. Specifically, he points to two videos depicting the incident, a police report, and training materials for police encountering dogs. According to Mays, this evidence collectively tells a different story than the pleadings and establishes that it was reasonable for him to believe the dogs posed an imminent danger to him, thus making the shootings reasonable and entitling him to qualified immunity. Assuming we have jurisdiction to consider Mays's argument, we reject it because the materials he wishes us to consider, properly viewed, do not settle whether the shootings were objectively reasonable.[5] This is true for two reasons.

---

[5]When we have appellate jurisdiction over the denial of a motion to dismiss in a qualified immunity case, "the scope of appeal is limited to the narrow issue of whether plaintiffs have alleged a violation of 'clearly established' law." *Schatz Fam. ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003). "To warrant reversal, [the defendant] must show that he is entitled to immunity *on the face of the*

First, not all evidence Mays urges may be properly considered with the pleadings—at least not for the purpose he desires. Our precedent permits consideration of "materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record." *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021) (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)). Such evidence may not, however, be viewed for the truth of the matters asserted. *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831–32 (8th Cir. 2003).

But this is exactly what Mays asks us to do with some of the material. For example, he asks us to consider the police report, which he claims is appropriate because it was referenced in the pleadings. But he does not simply want us to consider the police report's existence. He also wants us to accept its narrative as truth. Thus, he asks us to accept as *fact* his own assertion that the dogs growled when they came toward him. Similarly, he provides police training documents regarding encounters with dogs and asks us to extrapolate from these documents when it is reasonable to conclude a dog poses a threat to an officer. Such use of documents outside the pleadings goes far beyond what we can consider at this stage of the litigation.

---

*complaint*." *Afdahl*, 933 F.3d at 1024 (emphasis added). We are not aware of any case law in the circuit permitting us to answer the separate question of whether the district court erred by not considering materials other than the pleadings. In *Jackson v. Curry*, our sister circuit held that it did not have jurisdiction over the question of whether the district court erred by declining to review a video with the pleadings. 888 F.3d 259, 263 (7th Cir. 2018). The officer in *Jackson* argued that the so-called "*Scott* exception" should apply, giving the court jurisdiction to decide this question. *Id.* at 264 (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). But the court concluded that the *Scott* exception did not apply because the video did not clearly contradict the complaint. *Id.* Just like in *Jackson*, the video depictions of the shootings do not completely contradict "the essence and essential details" of the allegations in the complaint. *Id.*

-8-

The remaining evidence consists of two videos capturing different views of Mays's encounter with the dogs. One is from the home security camera and the other is from Mays's body camera. Both videos clearly show the shootings. But neither has audio. So, we cannot ascertain whether the dogs were growling at Mays as he claimed in his police report. More important, neither video depicts the dogs' behavior leading up to the shootings in a manner entirely inconsistent from the allegations in the complaint. We simply cannot conclude from the videos that the dogs presented an objectively legitimate and immediate threat to Mays.

At this preliminary stage of litigation, the videos are insufficient to decide whether shooting the dogs was reasonable under the circumstances. Thus, dismissal at this stage is premature.[6]

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of the motion to dismiss.

_____

---

[6]Mays contends discovery would be pointless because he was the only witness to the dogs' behavior at the time of the shootings and deposing him would not uncover any new evidence. We disagree for two reasons. First, according to the pleadings, Mays is *not* the only witness to the shootings. The complaint states one of the children "witnessed the shootings and/or their immediate aftermath through an upstairs bedroom window[.]" Second, even if Mays is the only witness, discovery will give the opportunity to explore his recitation of events in a way the police report did not provide.

-9-